My name is Nathaniel House. I'm a judge on the appellate court and presiding over this case with me are Justices Margaret McBride and David Ellis. Will the attorneys who are going to make a presentation please state their names and the party they represent starting with the appellant. Yes, good morning. My name is David Harris and I represent the appellant Gregory Smith. Good morning, Janet Mahoney on behalf of the people of the state of Illinois. Thank you. We're going to proceed this way. Each side will be given 10 minutes to make an uninterrupted presentation and following that presentation the justices will be given an opportunity to ask questions. The appellant will be allowed to hold back a couple of minutes for rebuttal and after that the judges may ask questions of either party. Do either of you have any questions about how we are going to proceed this morning? No. Okay, with that Mr. Harris you may proceed when you're ready. Okay, thank you. Gregory Smith was 15 years old at the time of the shooting in this incident. He maintains his innocence and so too does the shooting victim Maurice McDonald who adheres that Gregory was not his shooter. Now all Gregory asks for is a hearing at which a trial judge or a judge can listen to McDonald testify and evaluate his credibility for the first time. To be clear, McDonald's exculpatory affidavit is not a recantation of prior sworn trial testimony. He never testified in this trial and the record reveals no details or contents of any statements he may have made to the police. So it's not rebutted by his own prior statements and even a recantation alone would be enough to get to an evidentiary hearing. We don't even have that here. At this pleading stage on the state's motion to dismiss below, the allegations and availability must be accepted as true unless positively rebutted by the record. The trial judge below cannot evaluate McDonald's credibility and this court cannot evaluate his credibility in this appeal. The only way to dispute the fact that's established by and assumed through McDonald's affidavit of Gregory's innocence is at an evidentiary hearing and that's what this court should come in case passed for. Even if we were though to look for some conflicting evidence in the trial record, the notion that Gregory's innocence would be no big surprise because the trial evidence was not strong. Only one witness identified Gregory at trial as the shooter and that was the second victim Cruz Caldwell. Mr. Caldwell was in a coma for more than a month after the shooting so a faulty memory would not be a surprise. He then never identified Gregory for the two years, more than two years, until trial 26 months after the shooting, some 24 months after he emerged from his coma. Never once identified Gregory in a lineup, in photo array. He testified he never identified him. The police never testified about any identification procedures with Caldwell and the prosecutors below told the court that they never showed so the first time he identifies Gregory's at trial 26 months later and how did that go? He was asked to identify his shooter and he said the name Gregory Smith. He did not know Gregory Smith, he just said his name. Now then the prosecutor had him point him out in court of course but his initial response to identify the shooter was to regurgitate what he had learned elsewhere like Gregory Smith was alleged to be his shooter. So even if we do look for some evidence, it does not, it's not strong enough to positively rebut the evidence in McDonald's affidavit that Gregory did not shoot him and did not shoot Caldwell. He was not the shooter. The trial evidence even conforms to the affidavit in some ways because McDonald says Gregory was the person he stopped to talk with prior to the shooting and Caldwell's trial testimony was yes, he was walking with McDonald, McDonald stopped to talk to someone and he continued on just prior to the shooting. So the whether we accept the facts in the allegation that Gregory was not the shooter or just that McDonald would testify this way in either and look for possible conflict in the record, in either case the record does not positively rebut Mr. McDonald's allegations that, that Gregory was not the shooter. This has to be settled at an evidentiary hearing. The McDonald's affidavit can support a claim as we've argued or a claim of ineffective assistance of trial counsel for not finding him if he is deemed to have been available to the defense prior to trial. In either case, this is still a pleading stage where we accept the evidence as true and this is still a case where we cannot evaluate credibility until an evidentiary hearing. So an evidentiary hearing is required. This case needs a judge to listen to McDonald testify to evaluate his credibility and that's what we ask this court to send this case back down for. I know I was given 10 minutes, I don't think I have anything else to add at this point but I would be happy to address any questions you want to set. Thank you. Justice Ellis, do you have any questions? Just a couple, good morning Mr. Harris, how are you doing? Good, good morning. Good, I think one of the comments the trial judge made was that McDonald's said that he told the police, it's McDonald's right? McDonald's said he told the police that the defendant was not the shooter. Correct. And Judge Maldonado made the comment that presumably the state would have disclosed that defense. Do we have anything in the record to show any kind of a Brady disclosure on that point? No, the record doesn't show what was disclosed. I think, I mean, the defense, at least at the post-conviction proceedings, the defense attorney at post-conviction was aware that there was an identification procedure and there's testimony in the trial that he viewed a lineup. There's no testimony about what he said at that lineup. The only thing we have in the record is I told the police he was not the shooter, he was the person I was talking with. If the state has some evidence of prior statements that's not in the record, that could be brought out at an evidentiary hearing. But based on the record, we know nothing of the contents of what he ever said to the police. In fact, the police weren't even allowed, the detective John Foster wasn't even allowed to testify at trial that after this identification he was looking for Gregory. There was an objection that was sustained and they moved on from that point. So there's not any sort of implication or speculation we can make. But speculation alone is not positive rebuttal by the record. That's something that also has to be addressed at an evidentiary hearing. The trial court was also concerned, I thought, about the lack of detail in Mr. McDonald's affidavit. I think he said something to the effect that, you know, he says Gregory Smith didn't do it, but he doesn't say anything about who did. What is your response to that comment by the trial court? Exoneration does not require conclusively identifying who the actual suspect was. I think the affidavit was made, you know, written by a layman who's trying to write a wrong that he learned about. He knows Gregory wasn't his shooter. He said it and there's enough detail and it even aligns with some of the trial testimony. He stopped to talk to Gregory. Gregory did not shoot him. Gregory did not shoot Caldwell. He says he told this to the police and we have nothing in the record that rebuts that. And he says he was out of town and didn't know Gregory was proceeding to trial. I don't think we should reject a claim of innocence at this point simply based on he did not, you know, perhaps saying exactly what date he left the state, what date he returned. I don't think those type of details are required. That's something that could be probed at a later, an evidentiary hearing. But I think the affidavit is more than sufficient to obtain that evidentiary hearing. Okay. Thank you. That's all I have. Thank you. Justice McBride, do you have any questions? I do. Good morning, Mr. Harris. Good morning. I have quite a few questions for you. Great. First of all, it is the petitioner's All right. So the first one is whether this evidence was newly discovered. And I'm not aware of any case, and perhaps you can fill in the blanks, where a witness who's all over the police reports and who actually said that he advised the police that your client was not the shooter, any case that would say this was newly discovered evidence. What case do you rely on to suggest to us this is newly discovered? Well, I think just the general cases defining newly discovered as evidence that would not be available through due diligence prior to trial. And it doesn't actually depend on actual efforts by counsel. It depends on whether this evidence could have been discovered through due diligence. And here we know it can't because Detective Foster testified he sought for a couple months or six weeks to find Mr. McDonald and could not find him. And if the detectives have an address, which they're providing in an answer to the defense, and they can't find him there, and they can't find him through the powers of the detective department of the Chicago Police, where is counsel supposed to subpoena him if the address isn't turning up for the police or the prosecutor? So even if counsel, we don't know counsel's steps here. We don't know what counsel did. We don't know if counsel performed reasonably or unreasonably in trying to seek him. But we do know that regardless of what steps he took, McDonald could not be found through due diligence because the defense should not be held to a higher, some higher investigatory power than the police or the prosecutor's office. Well, when you talk about that the defense shouldn't be held to a higher investigatory process, the burden is not on the state in this case. The burden is on a petitioner to not only show that the evidence is new and couldn't have been discovered, which I think, you know, your response is that you're not even telling us about a case. The police reports indicate he was a witness. And he says he told the police his information. But give me a case that says suddenly, you can use testimony that the police tried to locate him that shows the petitioner was duly diligent in trying to locate this witness. I'm not aware of any case that suddenly says, well, the police couldn't find him. So we have exercised due diligence. What case? What authority? Just give me a case. Give me something. I don't have a case that I'm aware of where someone who was listed as a witness was considered newly discovered. But I also think respectfully, you misstated the standard there about was the defendant diligent. He doesn't have to be diligent. The standard isn't whether you were diligent. It's whether it could have been discovered through due diligence. And here the record shows it could not be discovered through due diligence because the detectives, the police could not find him, the prosecutors could not find him. And so if they're diligently seeking him and cannot find him, the record shows it was unavailable through due diligence. So it's not whether he actually acted diligently, his counsel acted diligently in seeking him. It's whether diligent action could have produced this evidence. And here we know it could not. If it could have, then counsel was ineffective for not finding him. I don't agree with you at all. I don't think that you're relieved of any burden whatsoever. And I don't think a reference that the police tried to find him is showing that with due diligence that it would have been impossible for you to find him. Edward suggests a subpoena. And in any event, there's nothing in this record that shows other than your statement that the police tried to find him before trial. So therefore, we exercise due diligence and we couldn't find him because they couldn't find him. There's no case that suggests you no longer have the burden. I'll move on to another area. Certainly. Go ahead. I'm not arguing we're relieved of the burden. I'm saying the burden is satisfied by the record. And again, it's not that counsel had to act diligently. And it's not my statement that the police couldn't find him. It's Detective Foster's testimony at trial that he couldn't find him. So we have trial testimony. So our burden is satisfied. We're relying on the record to satisfy our burden, not just waving the burden away. You haven't cited any case. You still haven't explained how some way you don't have to exercise any due diligence because in this case, the police couldn't find him before trial. There's no case that suggests that. I don't think there's any authority whatsoever. The burden is yours. And I don't think you can rely on a statement by a police officer that we tried to find him. And the fact that he didn't show up was a red flag immediately that would indicate this guy is not going to testify for the state. So I don't think there's any due diligence. Now, newly discovered. Are you familiar with the most recent statement by the Illinois Supreme Court in People v. Kevin I don't know, in February. I'm familiar with the case generally, but not a specific statement about newly discovered. In that case, the Supreme Court said that a witness who was named in the police reports that the parties knew of that would say similarly to what this witness would say, he didn't shoot me. She was not newly discovered. She was on the police reports. There was clear testimony that she didn't testify at trial, just like this fellow. So that she was not, it was not newly discovered. That's what People v. Kevin Jackson says. So I'm not sure how you would distinguish that. But it said, the police reports appended to the successive petition, make clear that Davis was known to the parties from early on in the police investigation. And then it says, Davis was ready to testify. Well, either way, she was known and she was not considered new. I think that would depend on a statement that that witness could have been discovered. And here in our case, Mr. McDonald could not have been discovered, even though he was on a police report. I do think, you know, it's nice to cite a case. You did cite Ortiz in your brief, but you know, I think it's the Supreme Court's definition of evidence that could have been discovered through due diligence. That was unavailable, despite counsel's best efforts. You've done that because the police tried to find him before trial. All right. So let's move on to the identification. The defense to trial was this was a misidentification, wasn't it? Yes. Yes. Yes. Okay. Caldwell's weak identification. All right. So now it's no longer an identification case, is it? Yes. The identity of the person who shot the two victims. All right. But before, you argue that this is an extremely weak case because Caldwell and the other gentleman weren't really sure about their identification. Now you've got a third eyewitness putting your client at the scene, correct? Yes. All right. So another thing that the trial judge said here was that there were a lot of conclusions. For example, he didn't really explain who did commit the shooting, but he did put your client at the scene. Yes. And you agree that now your client was there so that these other two witnesses, at least as far as identifying your client, they were right about that. Is that right? They were right. He was around. He was there. He was nearby. Yeah. I don't think that's different than the defense at trial, that he was not the person who shot them. There was no allegation that the person McConnell talked to was someone else. The defense at trial was they were wrong in identifying him. It was not that he was there and he wasn't the shooter. That was not the defense at trial. The defense at trial was that he was not there at all and that they were mistaken in their identification of him. The defense was the two other people did this. Wasn't that the who put something in his pocket, which may have, which Mastin identified as Gregory Smith. He didn't see what the item was. And this was a few minutes after the shooting. The defense at trial was that you cannot believe these witnesses that Gregory was a shooter because Caldwell was in a coma, didn't identify for two years and identified him by name at trial. And then Mastin's eyesight was poor. He didn't see much and he never identified the shooter either. That's exactly my position on appeal. That has not changed. They identified the wrong person. There was no defense. The defense did not put on some theory that McDonald spoke with anyone else. I think your idea of what the defense at trial was is completely different than what the lawyers argued. And that's fine. But actually now it's no longer a case of mistaken identity at the scene. It's who actually pulled the trigger. Isn't that your, that's what your position is. And you're saying that that's what the defense was all along. All right. So the other thing the judge said here, was that this was not so conclusive. And you take the old and the new. Is that right? No. Under the recent Robinson decision, the new allegations... You take the old and the new. This is not a success of PC. But you take the old and the new and you have to show that it's probably true or not that the outcome would be different. Based on the new testimony, right? Probabilistic determination. Yes? Yes. Yes. The probable different outcome. Okay. So here you have a witness who says, and oh, let me ask you this. Is there any case that says I was out of town is unavailable? Any case that says that I was out of town? Ortiz was quite different. Ortiz was a witness who was never known to the police. He was never listed in the police reports. He left Chicago immediately for Milwaukee. He was related to the gang members involved in the shooting. He didn't tell anyone what he saw for about 10 years until he reported to Mr. Ortiz's mother. I'm familiar with the case because I was one of the judges on the appellate court level when we said that he was entitled to a new trial. So Ortiz is not comparable. Well, I'm not saying it's comparable. I'm saying it's a case where the defendant left town immediately after the shooting. Right. But that case does not stand for the proposition you're suggesting that unavailability means I was out of town. Does it? Well, certainly that's part of Ortiz's analysis. He left town and could not be found. But again, the definition of Ortiz is whether it could have been found through due diligence. Now I'm talking about unavailability. The Ortiz decision does not in any way suggest what you're saying, that unavailable equates with I was out of town. We disagree. Now, as far as your suggestion that if we don't find that this was new or conclusive, that somehow we should decide the lawyer was ineffective. Is that your position? That post-conviction counsel was unreasonable for not amending to make sure this claim gets heard one way or the other and avoid the procedural argument by the state of waiver. And is there any case that allows you to raise an issue for the first time on appeal? Yes. Tons of cases allow arguments that a post-conviction counsel was unreasonable in the performance of the second stage. That's my argument. You would have to raise that in a successive petition. You can't raise a claim that was not raised in the PC. There's Pendleton, there's other Supreme Court cases, Jones. We don't have the supervisory authority you're suggesting that we can suddenly take up your argument that post-conviction counsel was ineffective. Again, cite me a case. Yes, of course. I mean, they're in the brief. Post-conviction counsel has a duty to perform reasonably, and that includes making reasonable amendments to avoid certain things like forfeiture and waiver. And here, a claim that evidence is not newly discovered is a claim that he's waived this reliance on this affidavit. And a routine amendment to avoid waiver is counsel's duty on post-conviction proceedings at the second stage. And that would be to say, well, if this isn't newly discovered, this trial counsel was ineffective for failing to find him. It was even argued, the state argued below that there's no claim of ineffective assistance. That should have at least alerted post-conviction counsel that he had not... So you can't raise something new for the first time that wasn't in the petition. We don't have supervisory authority to engage in this analysis you're suggesting. And there is no case that gives us that supervisory authority. So I'm not going to touch the ineffective assistance because there's no authority for us to consider your alternative arguments. Well, Suarez and Perkins, let's say you do raise this on appeal. If the first time instance you can't, it couldn't have been in the petition. Unreasonable assistance of post-conviction counsel could not have been in the petition. It is raised routinely on appeal from a second stage dismissal. I'm not going to debate with you. Its place would be in a successive petition. You didn't respond in your brief, in your reply brief, to Jones or Pendleton because we have no supervisory authority to take up issues that you raise as an alternative ground that were not in the PC. And you haven't given me it. Suarez is not a Supreme Court case. Whatever other case you cited is not an Illinois Supreme Court case. And we're bound by Illinois Supreme Court authority. So that's all I have. But Suarez is a Supreme Court case. And what does it say? That the Illinois Appellate Court has supervisory authority to consider new issues raised for the first time on appeal. Well, I think we're talking about two different issues. You're talking about ineffective assistance of appellate counsel. Our argument at bottom is unreasonable assistance of post-conviction counsel. And that is raised on appeal. You can't raise that for the first time on appeal. There's no case, and your Suarez case does not say that. We do not have that authority, no matter how many, you know, we just don't. We don't. So I don't have any further questions. All right. I don't have any questions. I think my colleagues have adequately covered this. Thank you. Ms. Mahoney, you may proceed when you're ready. Good morning. Again, Janet Mahoney on behalf of the people of the state of Illinois. The only issue that should be considered by this court is whether the trial court properly dismissed petitioner's claim of actual innocence at the second stage of the proceeding. As noted, petitioner's claim of ineffective assistance of counsel may not be considered by this court where it was not included in his post-conviction petition. And post-conviction counsel did not have a duty to amend the petition to include new issues. So there really is no issue as to whether post-conviction counsel was unreasonable. Looking at the claim before this court, the trial court properly dismissed petitioner's actual innocence claim, where Maurice McDonald was not a newly discovered witness, and the information in his affidavit was not so conclusive that it would probably change the result on retrial. McDonald was not newly discovered, and as noted by Justice McBride, there is nothing which shows that defense counsel, like the people, could not find McDonald at the time of the trial. Petitioner cannot rely upon the people's inability to find McDonald to prove that he could not find McDonald. It is the petitioner's burden to just show something that he could not find McDonald, and he failed to do so here. Also as noted, petitioner was aware of McDonald at the time of the trial, he was named in the police report, and he was aware of what McDonald could provide at trial because petitioner was speaking to McDonald just before the shooting. He knew that how McDonald could support his defense. Yet there is no indication petitioner attempted to subpoena McDonald to testify at trial, and there was no explanation of why subpoenas were not issued. In addition to being unable to satisfy the due diligence requirement, the logical inference is that McDonald would not have been helpful to the defense case, but instead would have hurt it. As a result, McDonald was not newly discovered. His affidavit statements also were not so conclusive that it would change the result on retrial. While we take as true that McDonald will take the stand and testify consistently with what he stated in his affidavit, we do not, as the defense suggests, accept that what McDonald stated in his affidavit, that the petitioner was not the shooter, we do not accept that as indisputably true. The inquiry is whether the new evidence, if believed and not positively rebutted by the record, would likely change the result on retrial. The conclusive character element requires that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. Petitioner did not do that here. Importantly, McDonald's affidavit is not helpful where he places petitioner at the scene. Also, his claim that petitioner was not the shooter could be discredited. There are two prior statements that he gave to the police. There are two identifications McDonald made of petitioner just after the shooting. These items were tendered during discovery. And defense counsel's decision not to subpoena McDonald means the statements and IDs were not favorable to petitioner. This is a fair inference. There also was substantial evidence proving petitioner's guilt. There were two credible eyewitnesses who presented unrecanted testimony that petitioner was the shooter. And importantly, there is a footnote in the defense brief indicating that he now has an affidavit from Caldwell. This court should disregard any reference made by appellate counsel to some affidavit. It wasn't before the trial court in this case. The contents are unknown here. But more importantly, again, it wasn't before the trial court. And this is nothing but an inappropriate invitation for this court to consider matters for the first time on appeal. Looking at Cruz Caldwell's testimony, his testimony alone was enough to convict. Caldwell was focused on petitioner's faith and petitioner's movements before the shooting. He was walking with Maurice McDonald on the east side of Ingleside from 52nd towards 53rd at 4pm when McDonald stopped to talk to someone. Caldwell kept walking and he noticed petitioner next to another boy who was on a bike on the west side of the street approaching from 53rd. Caldwell observed petitioner and the boy on the bike separate and he observed petitioner closer to McDonald. There was something about petitioner and his friend that caused Caldwell to turn and look at petitioner. Caldwell saw petitioner's face, saw petitioner raise a gun, pointed at McDonald and start shooting. Caldwell saw petitioner turn the gun towards Caldwell and start shooting and saw petitioner again point the gun at McDonald and start shooting. Caldwell had several opportunities to view the offender for a reasonable period of time under afternoon daylight conditions and he had a clear unobstructed view of petitioner's face at the time of the shooting. Admittedly, Caldwell did not describe the shooter to the police because he was in a coma for two months and during the time he was in the coma, petitioner was placed in a physical identified and charged. This is why Caldwell was unable to view a lineup with petitioner in it and why Caldwell identified petitioner for the first time at trial. This delay did not mean the identification was incredible, especially where Caldwell had a clear opportunity to view the petitioner under optimal viewing conditions before and during the shooting event and there's nothing in the record which indicates the identification was equivocal. Caldwell stated that the delay did not impact his ability to identify the shooter. But Caldwell wasn't the only eyewitness. We also also have Eddie Mastin, the retired Cook County Sheriff who watched McDonald walk past him and then when McDonald was a half a block away, he heard the shot. Mastin observed a man on a bicycle pull up to the corner of 52nd and Ingleside and observed petitioner jump on the back of the bike and place an item in his pocket and say, go. Mastin picked petitioner out of a photo array and physical lineup in court. This court found those identifications credible and reliable and found the evidence in this case was not close in petitioner's direct appeal. Petitioner failed to show McDonald was new and the petitioner failed to show that McDonald's affidavit statements were conclusive and that his testimony would likely change the results on retrial. Petitioner did not make a substantial showing of a tolerable claim of actual innocence based on Cory's McDonald's affidavit and the trial court properly dismissed the petition at the second stage of the proceeding. All right. Justice Evis, do you have any questions? I do have a couple. Good morning, Ms. Mahoney. Thank you very much. It's still morning, fairly. You said something at the close to the outset. I believe you said that we have to take as true that McDonald would testify consistent with his affidavit, but we don't have to take the substance of the affidavit as true. Is that your position? No, we don't have to say that it's indisputably true because if it's rebutted by the record that, i.e., somebody else was the shooter or petitioner was or was not the shooter, it doesn't matter what he stated. If we accept as indisputably true everything that is stated in the affidavit, we will not have a first or second stage proceeding. There would be no point because then it is true petitioner is not the shooter according to the affidavit. Well, it depends on the case. I mean, if you have a victim saying, I'm the one who was shot and this guy in jail is not the one who shot me, yeah, you're right. I mean, you would take that as true, and if you took that as true and believed it, you'd say, we have to advance this, but not every post-conviction petition is like that. I mean, sometimes the newly discovered evidence is something that doesn't hit that head-on. This is a fairly head-on hit, right? This is literally the victim saying, this guy did not shoot me. Correct, but again, perhaps think of a case that there was video evidence and you could clearly see the shooter on the video evidence, yet the victim comes into court, goes through an affidavit and says, the defendant didn't shoot me, and we're supposed to accept that it's indisputably true. There would be no first or second stage proceeding. Okay, so if there was video evidence, but I think what you're saying is if there is evidence in the record that he was the shooter, that that means the record rebuts what we're getting from the new affidavit. Correct. It shows that it isn't conclusive that this would alter the outcome on retrial. But didn't Robinson finally put that argument to bed and say, just because the trial evidence conflicts with the new evidence doesn't mean that it's rebutted by the record? I think what Robinson put to bed was the total vindication and exoneration aspect, but what's still alive is that there needs to be a conclusive character to it, that it would probably change the result on retrial. And here, when you have the affidavit from McDonald's and you look at it in conjunction with not only the information in the affidavit, but what all the other evidence in the record shows, it's not going to change anything on retrial yet. But doesn't Robinson say that we should look at this and ask, if believed, it would probably change the result, if believed? In fact, I think you used that phrase. Isn't that the phrase in Robinson, if believed? If believed, he's going to take the stand and say, the defendant didn't shoot me. I believe he's going to take the stand and say, the defendant didn't shoot me. I accept that he's going to take the stand and say that. But accepting that doesn't mean that you disregard the rest of the evidence in the record. And the rest of the evidence in the record shows that even when he takes the stand and says that, it's not going to change the case. Counsel, when Robinson is saying that, they're saying if the substance of the testimony is believed. I mean, of course, if he's swearing under oath, we presume that he would testify consistently with that if there were a hearing. What Robinson says is, let's look at the substance of what's in that affidavit. And if it's believed, just hypothetically for the moment, because we don't know yet, if it's believed, would it make a difference? Not just would he testify, but if it's believed. Isn't that what Robinson says? And as I'm saying, that it's believed that he will take the stand and he will say the defendant didn't shoot me. No, no, no. What's believed is that the substance of his testimony, not just I'm going to testify that, but what he is going to testify to would be believed. We're supposed to assume for the purposes of a first and second stage that there's an affidavit where the victim says this guy didn't shoot me. The guy in prison for attempted murder of me did not shoot me. We're supposed to believe that testimony. Not at the third stage, but at the first and second, we're supposed to believe it. We're supposed to believe what this guy is saying, i.e. he didn't shoot me. And then we compare it trial testimony and say, if this were believed, what impact would it have on the evidence? And, you know, we don't get a lot of these words of this on the nose, but for something like this, if the jury believed the testimony of McDonald that defendant didn't shoot him, there's really only one outcome, right? He would be acquitted if they believed that. Under that, there would be no first or second stage post-conviction proceedings anymore. Everything would advance to a third stage. And that is not how the post-conviction hearing act is written. And that cannot be what Robinson meant, especially when in your analysis, you're comparing what he said to the rest of the trial evidence and the rest of the trial evidence shows that even if he takes the stand and says that the outcome is not going to be different. Okay. I think that, I don't think, I don't believe that's what Robinson said. And your argument that this would eviscerate the first and second stage sounds like the dissent in Robinson. But not every case presents an affidavit that's on the nose. And there's all kinds of different affidavits, all kinds of different facts. There are plenty of cases we've had where even if you believe the new affidavit, it's, for example, you might have a recantation. You might have three people who saw the crime, who identified the defendant. One of them might recant and say, I actually, I said at trial that he was there and he shot him. But in fact, I wasn't there as at the movies. Well, even if that's true, that doesn't touch the other two witnesses. And so that probably wouldn't get you past the first stage. There are all kinds of different cases. And I'm sure you've seen more than I've seen. And I've seen a lot. But this one is from the jury. If the jury believed that, if the finder of fact believed what he's saying, is there any chance in the world that they would have still convicted him? Again, not only would it have an impact on first and second stage, but it also would have an impact on actual innocence law. Because why would we then consider whether this was newly discovered evidence or not, when it's so conclusive that the defendant didn't shoot him, that we would go advancing the case because it wasn't newly discovered. And so it would impact not just the first and second stage of the post-conviction proceedings. It would also eliminate all of those factors we're supposed to consider when considering an actual innocence claim. No, it wouldn't. Why would that be true? I mean, we have all kinds of rules of forfeiture and waiver. We always say, if you had the opportunity to raise this and you didn't, we're going to hold that against you, which is what newly discovered is saying. It doesn't mean that every case advances to the third stage. But what I'm saying is what I believe Robinson said. And your suggestion that that's going to, you still haven't actually answered my question. You keep saying that would be a floodgate. But isn't it the case that if a jury believed this affidavit testimony, that it would invariably have acquitted the defendant if they believed him? And if they believed that he didn't shoot him, that means that they have to disbelieve Caldwell in Eddie Mastin. And in that scenario, then what is the point of doing a comparison at this point of the proceeding if we have to accept that it's indisputably true that the content is absolutely accurate without contradiction? Yeah. Counsel, at the second stage, yes. Not at the third stage. At the third stage, you compare all the evidence. You have an evidentiary hearing. You hear how credible this person is and you make a judgment, right? I mean, isn't that how this works? I mean, Robinson said just because there's conflicting evidence does not mean it's rebutted by the record. Video evidence, DNA evidence, things like that might be record rebuttal evidence. Like you're hypothetical if you catch the guy on video. But just the mere fact that people testified at trial, I mean, if that's all that it takes, then there's no such thing as a post-conviction act because there's always going to be some evidence, I would hope, of a defendant's guilt if you're going to convict him. I would hope you always have evidence if he gets sent to prison for attempted murder. And that's always going to conflict with the claim of actual innocence. Robinson is very clear that a mere conflict in the evidence is not a basis for rejecting the claim. Am I wrong? Am I reading Robinson wrong? I think we are having a disagreement about the full extent of what Robinson said with the conclusive nature of what an affidavit is. And again, given the evidence that we have in this case and the fact that we still have other factors under the actual innocence claim. I'm not saying otherwise. I'm not speaking to the other factors. I'm not suggesting they shouldn't be considered. I'm just talking about the conclusiveness. And I interrupted you, so please continue. No, that's okay. It just seems that if it's conclusive that the defendant didn't shoot Cruz Caldwell and Maurice McDonald, then shouldn't it advance regardless of whether it's really discovered or not? Because he's actually innocent. Well, I may have my own opinions about that, but I think that I'm on the appellate court, not the Supreme Court. So we follow the four elements that are required. Correct. And that's the point I'm making is that to say that it's indisputably true the defendant is not the shooter would also impact those four factors that need to be considered under actual innocence. And it just cannot be that you, again, and we're supposed to compare the affidavit to the rest of the testimony that's in the record. Yeah. Okay. We're going in circles, but I appreciate your answers. I appreciate it. Thank you. That's all I have. Thank you, Justice. Justice McBride, do you have questions? I do. I think, Ms. Mahoney, that what you're saying is Robinson clearly, the majority clearly enunciates that where you can't say the evidence is not indisputably true, you do consider that evidence. And here your argument is, if I'm getting it, is that when you have two eyewitnesses that say this person shot me, and you have a new witness that says he didn't shoot me or the other person, that we can say this is not indisputably true. I mean, maybe I'm wrong. Is that what you're trying to say? Robinson used that language. So in addition to saying if believed, the Robinson court did come up with new language we have not seen before, which is that if it's not indisputably true, then it doesn't move on. There are two parts, or there's more than just a simple part to Robinson. Now, you agree, don't you, that if this is not new, we're not going further. Is that true? That is correct. Are you familiar with Justice Burke's opinion in Jackson that said a witness known to the people, I mean the parties all over the police reports, is not new? Are you aware of that case? I am not aware of that case, although I was able to pull it up. But it's not so far afield from what Edwards was saying about did you subpoena them? Did you explain why there isn't a subpoena? Does it matter in this case that this witness doesn't appear for nine years? I think it should matter because his only explanation was I was out of town at the time of trial. There was no explanation of like in Ortiz, I moved out of state. Nobody knew I was on the scene. This is somebody who was on the scene speaking to the petitioner in this case at the time of the shooting, and yet we don't find him for nine years. There's no explanation. Well, going to the, I disagree about this whole question whether this is newly discovered. I could, I may be wrong. But as far as the trial judge here, and whatever standard he used, it doesn't really matter. We're reviewing it de novo. But what he said was that the fourth element, that it's so conclusive, had not been established. And this is what these, what the is that they, I still think you look at the old, you look at the new, you consider them together, and then you make a probabilistic determination of whether or not the result would be different. Here, the judge said, you have two eyewitnesses. They identified him as the shooter. You have other evidence in the record regarding the shooting. The two witnesses corroborate each other. There's a, they leave on a bicycle. Make a long story short. Then you have a witness who says, I told the police when I identified the defendant at the lineup, this is in the record, that I told them the last person I saw before I was shot was Gregory Smith. But I told them that he did not shoot me. Now, whether that's new, newly discovered or not, put it aside. Fact of the matter is, look at the old, look at the new. Is it indisputably true now that the outcome would clearly be different when a jury hears the two eyewitnesses and now they hear the witness who was out of town? I've been gone for nine years and now I'm telling you that I saw him at the scene. I identified him and I told the police it wasn't Smith. That now this is so conclusive when you weigh them together, old and new, that no reasonable juror would ever find him guilty. Or that using the Robinson language, that this is indisputably true and therefore move on to a third stage. So that's how I think the judge looked at this, although he was using other whatever language, but we're reviewing it to know though. And the question is, is this indisputably true now that what he says would change the outcome? And that's my thoughts on it. I think that Robinson says more than simply everything goes to a third stage. If it did, we wouldn't have a reason for any of these stages. And that is also the state's position. All right. Well, why, why, I mean, is that, is that your understanding that this statement from a witness is not indisputably true based on this record? Is that, is that your position? That is our position. And that is because two other witnesses have previously testified in a different fashion. Is that it? And at the time of trial, not nine years later. All right. And is there, and now is it, do you see this as suddenly this is no longer a case of identification? Well, I guess it is. He didn't shoot me, but now he's actually at the scene. So these other witnesses, these other witnesses are right that he was there. They're wrong that he was the shooter. Is a jury going to consider that in this substantial showing? Absolutely. It places the petitioner at the scene. It bolsters the identifications made and it bolsters the Cruz Caldwell's testimony about how he was focused on petitioner before the shooting and watched him come up the street and watched him cross the street and watched him pull the gun on his friend and then watched him pull the gun, turn the gun on him. And so Cruz Caldwell had many opportunities under optimal viewing conditions to watch this petitioner. And so given Cruz Caldwell, Eddie Mastin's testimony about what they saw, there's no reasonable juror would have come to a different conclusion given McDonald's affidavit statement. Let me ask you this. As far as subpoenaing witnesses, is it your understanding that cases try to interview witnesses before trial? Do defense attorneys go out and talk to state witnesses and try to get their investigators to give them statements? Yes. And importantly, there was a huge red flag when the state stated that they were not going to call McDonald's because they couldn't find him. What did the defense do with that? Again, he didn't subpoena the witness. He didn't explain why there wasn't a subpoena. And Edward talks about the importance of that test in the analysis, and we don't have that here. Where is their due diligence when an attorney knows that a witness is going to say he didn't shoot me? That's what he said. He said, I told the police when I identified him in that lineup that he was the last person I saw, but he didn't shoot me. Where is the due diligence of that attorney trying the case not to be able to discover that if he goes out and interviews the witness? And importantly, it wasn't that he didn't subpoena him or explain the absence of subpoena. He didn't interject and say, hey, this witness is really important in my case. I don't want to go forward with it yet. We need to find him. He's crucial to my defense. There is silence on the record on the issue. What is your response to counsel's argument that when a detective testifies that he tried to find Maurice McDonald 30, 45 days before trial, that that equates with due diligence on an attorney's part? As you stated earlier, it is the petitioner's burden to show something and nothing was shown here and they cannot rely on the state's inability to find the witness because for all we know, the defendant knows exactly where he is. We don't know whether he does or does not know where he is. That's why petitioner's burden has not been met simply because the state doesn't know where he is. Well, if the police couldn't find the guy, why not use that as due diligence? They couldn't find him, so why not say, well, that's due diligence. He was unavailable and therefore this was not something that an attorney could do. If the police couldn't do it, he couldn't do it. Why shouldn't counsel be allowed to argue that and say that meets the standard for newly discovered evidence? Because there are so many unanswered questions which include perhaps petitioner's involvement in the absence of the witness for the time of trial. So to say simply because the state can't find them doesn't should not equate that the defendant can't find them because we're going to have cases where there are a lot more missing witnesses. Are you aware of any authority at all in Illinois that suggests that due diligence can be established by saying the police couldn't locate a witness? There is not a single case that states that unless, let's just throw it out there, if the defense counsel put something on the record, and I was working with the police because they couldn't find him and I was trying to find him too, but we have defense counsel saying nothing about what they did trying to find this witness, nothing. I don't have any other questions. Thank you. Ms. Maloney, getting back to the conclusive character of Asa Davis that's needed to move forward, I'd like to go to paragraph 56 of the Robinson case, and I don't want to bore you, but I'd like to read that. As previously noted, the new evidence supporting an actual innocence claim need not be entirely dispositive to be likely to alter the result on retrial, and they cite Coleman. Rather, the conclusive character element requires only that the petitioner present evidence that places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. Now, when you have a shooting, you have one victim saying, yeah, this is what shot me, but now you have another victim coming in and says, yeah, I talked to him right before the shooting. This is not the person that did the shooting. Doesn't that place this evidence in a different light? It may not be entirely exonerating, but it places the trial evidence in a different light. But it isn't of such a conclusive character that it would change the result on retrial, and I think it's also important to note that that's exactly what Robinson said in paragraph 56. That's not necessary. As previously noted, the new evidence supporting an actual instance claim need not be entirely dispositive to be likely to alter the result on retrial. It does not have to be entirely dispositive. It only needs to place it in a different light, and what the defendant is arguing is that when you have a victim slash witness who was unavailable at trial that says, this gentleman is not the person that shot me, that it places the other trial evidence in a different light, particularly when there was a two-year gap in identification from one witness, and when you have another witness who had difficult identifying a color of a tie, his eyesight was bad. And when you look at the whole situation, it places the whole trial in a different light. That's what he's arguing. So I have two points to make on that, and the first is it's important to understand where the Robinson case came from and what they were trying to address, and that was the standard from Barnsleder with the total vindication and exoneration, a standard that was widely relied upon in trial courts and in appellate courts in addressing these issues. And they were saying in Robinson that cannot be the standard. But now it seems as if what you're suggesting swings the pendulum all the way to the other side and says, hey, you get a witness who says the defendant was not the shooter. Not a witness, a victim. A victim saying this guy did not shoot me. That's a difference. Right. We also, though, have the victim who testified at trial who said he did shoot me. And that's where you need a finding of fact, a hearing. You have also, when you talk about Eddie Mastin's testimony about his eyesight, Eddie stated clearly before the jury that while he was having trouble with his eyes at the time of trial, he had no with his eyes at the time of trial. The jury accepted that. And this court also stated that it wasn't going to interfere with that jury finding. So you have two witnesses. And importantly, McDonald's affidavit, as the trial court noted in his order, maybe stated that perhaps petitioner, he says petitioner is not the shooter. Petitioner is involved in the event. Whether it's as the shooter or accountable, he is involved in the event. And so there is speculation, though, isn't it? Rank speculation. There's an there's an abundance of evidence in this in this record that shows that it is not indisputably true that petitioner was that not the shooter. And there has to be some consideration. What would be the point of comparing the evidence to the affidavit? If it's taken indisputably true, we have to accept it. Third stage hearing. All right. Now, in our case, the standard is not in the truth. The court didn't say the defendant has to exercise due diligence. The standard was that. Whether or not evidence constitutes new evidence is whether it could have been discovered if due diligence had been exercised. Isn't that the test? I don't have that quote in front of me. But. Again, the defendant has to or the petitioner has to say some things. So he did say something. He presented the affidavit of the potential witness who said he was out of town, not available at the time of trial. And you had the testimony in the record of the police officer saying he looked for him for 30 to 45 days and couldn't find him. Is there any reason to think that had due diligence been demonstrated as a case? There's zero due diligence here. Zero. I'm not arguing the issue of whether there was due diligence here. I'm arguing the issue of whether had due diligence been exercised because this gentleman in testimony didn't present it. And that alone is speculative then. The whole inquiry would be based on speculation, because you don't need to come forward with anything. You could just let your imagination run wild as to what I could have discovered had I done something. But isn't that exactly what our team said? It says it's exactly what the court said. The issue is whether or not the evidence could have been discovered with the exercise of due diligence. It didn't impose the requirement that due diligence be exercised. And that's the point I think the defendant is making in this case. And I believe that is the point. And it's the scenario that had I done this, it would have been due diligence, especially when the defense has not stated anything. We don't know why he went out of town when he was available. Before that, he was just out of town at the time of trial. He was available after the shooting. The police were talking to him. He was listed in the report. He made two statements. He made two statements. He was out of town. That's all we know. But what we also do know is that there was no subpoena issued and no explanation about that subpoena. And the fair inference is that they had all the discovery material and saw the identification information and the statements he made. I do have something now with what you just said. I'm going to read from the Illinois Supreme Court's latest pronouncement on what newly discovered evidence means. And this is a direct line. Paragraph 42. People versus Kevin Jackson. Within the context of an actual innocence claim, newly discovered evidence means evidence that was discovered after trial and that petitioner could not have discovered earlier through the exercise of due diligence. That's the standard. It comes from Coleman. Coleman has been cited numerous times. It is that the petitioner could not have discovered earlier through the exercise of due diligence. Here we have a witness who says in his affidavit that I identified him in a lineup. I told the police, this is all before trial, I told the police he was the last person I saw and that he did not shoot me. The issue is, has petitioner met the burden here of establishing that he could not have discovered this evidence earlier through his exercise of due diligence? And the response is, well, the police couldn't find him, so there you go. If that's the law, then this is newly discovered evidence. I asked for cases, no one gives them to me. I cite this case where the Illinois Supreme Court recently said the witness was all over the police report. The police report, anyway, I need to put my battery charger in. So I'm done. I know we have some rebuttals. Excuse me one second. I apologize for that interruption. Okay, you're all back? Okay. All right. Mr. Harris, you may proceed with rebuttal. Yes, thank you. Before I address Jackson, which I would like to do, I want to quickly point out two points. Counsel early on said that two witnesses at trial identified my client as the shooter, and that's false. Mastin did not testify that he was the shooter. He testified he didn't see my client until a few minutes after the shooting, and he never saw a gun. As far as the affidavit, it doesn't say he was just out of town on the day of trial. It says he was out of town and unaware of the trial. Would I prefer a more detailed explanation of how long he was out of town? Of course, but that shouldn't be enough to thwart Gregory's strong claim of actual evidence. Now, as far as newly discovered, let me be perfectly clear in my position. There is no due diligence requirement for an actual innocence claim. None. The requirement is that the evidence could not have been discovered exactly in that language your Honor McBride quoted from Jackson, that it could not have been discovered through due diligence. An actual innocence claim does not depend on trial counsel performing reasonably and exercising due diligence. Actual innocence can be raised regardless of how well a petitioner's trial counsel performed and how diligently they acted. And Jackson itself then went on to note that, first, this isn't new because it was repetitive of the trial testimony. Second, it's not new because, again, they were in the reports, but then concluded that they both attested that they were present at trial. If they're present at trial, of course they could have been discovered through due diligence. That's vastly different than here, where nobody could find McDonald. The police and prosecutors could not find McDonald leading up to trial. The counsel also mentioned some other diligence in not presenting this affidavit for a number of years. That simply had no bearing at this case on a timely first petition. That type of diligence in presenting a new claim of evidence is about excusing an untimely petition. Here we have a timely first petition and that's what we're appealing from. Then there's a lot of discussion about Robinson. Robinson talked about the pleading stage and gave two clear definitions of what it means to be accepted as true and what it means to be positively rebutted by the record. It's clear that accepting as true is accepting the substance of the allegation, not just that someone would testify in a certain manner, and then you determine whether this is credible or not. That starts giving you the credibility, weighing it against the trial evidence. That's a third stage review. Then, as far as positive rebuttal, Your Honor, Justice McBride talked about accepting this as indisputably true. I think that flips Robinson on its head. Robinson doesn't say you assume this as indisputably true. It says that you assume this as true unless it's indisputably false. It cited Sanders as an example where an autopsy report showed two bullet wounds, making the new allegation of one gunshot indisputably false. I think counsel's example of surveillance footage could also positively rebut a claim and make it indisputably false. We don't have that here. We just have trial testimony that we've discussed the relative weaknesses or Now, Robinson was a leave to file case for a successive petition. Here, we actually have a timely first petition. Robinson cited Sanders as a second stage petition, but Sanders, again, had positive rebuttal by an autopsy report. Then it also went on to talk about how three other witnesses, three trial witnesses, implicated the defendant as the perpetrator. Here, we only have one saying he was the shooter. Sanders still, even a second stage case, is different than here. Robinson also cited Ortiz as one of these cases the state was relying on for this conflicting evidence standard and looking at conflicting evidence. Ortiz talked about conflicting evidence and actually remanded for a new trial because the new evidence conflicted with the trial evidence. Because the new evidence conflicted with the evidence of guilt, that's why it is a claim of innocence. Robinson said it would be illogical if there was no conflict, because then it would not be an innocence claim. There shouldn't be some second stage, you can't get past the second stage because there's a conflict with the evidence, but you get relief at the third stage because it conflicts with the evidence of guilt. Every actual innocence claim conflicts with evidence of guilt. Otherwise, there would be no conviction. Lastly, counsel talked about how, speculated about that, McDonald may have hurt the defense if he was called and referenced his statements, of which there's no detail in the record, no detail of what this identification was or what he may have said. I would note that these statements were about a month before, his interaction with the police, I believe, ended about a month before the charges were filed, which fits with him, even though he's involved in this investigation, not being aware that Gregory was going to trial on this. But also, this speculation is not, cannot be positive rebuttal of a new allegation. I mean, if we want to speculate about why McDonald, the police were searching for him or how he could have hurt the case, I would note this is Detective John Foster who comes up in People versus Jackson also has built a name for himself, developed a bit of a name for coercing witnesses, has had multiple allegations, has cost the city millions of dollars and cost an innocent man a decade of his life. But that speculation is not something we want to get into. The state shouldn't be speculating that McDonald's testimony would have hurt my client. That is something that can be Gregory Smith was just a kid at the time of this offense. He is now three years away from completing his sentence. He wants and deserves a chance to clear his name. He shouldn't have to wait any longer. And I ask that this court send this back down for an evidentiary hearing so he can have that opportunity. Thank you. Thank you. Does anyone have any questions after what we just but I think it was fruitful. The brief was well prepared as well and we'll take it under advisement. Thank you so much.